J-S33038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAWRENCE CHAPLIN SHUGARS | |
| Appellant | No. 1712 WDA 2015 |

Appeal from the Judgment of Sentence April 10, 2014
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-CR-0000425-2013;
CP-42-CR-0000434-2013

BEFORE:  GANTMAN, P.J., OLSON, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED JULY 14, 2016**

Appellant, Lawrence Chaplin Shugars, appeals from the judgment of sentence entered in the McKean County Court of Common Pleas, following his jury trial convictions for two counts each of simple assault and harassment, three counts of recklessly endangering another person ("REAP"), and one count of disorderly conduct.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. Appellant resided with N.S. and her three-month old son.  On the morning of July 11, 2013, Appellant and N.S. had an argument at their house.  N.S. entered Appellant's car with her son.  Appellant told her to get out of the

_____

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 2709(a)(1), 2705, 5503(a)(1), respectively.

_____

*Former Justice specially assigned to the Superior Court.

car, which she did. Appellant then walked toward N.S., grabbed the car seat and diaper bag, and threw them in the yard. Appellant yelled at N.S. to go back into the house. When N.S. refused, Appellant said, "Don't make me do it out here," and ordered her to hand him the baby. N.S. initially refused but ultimately handed her son to Appellant. N.S. then slipped and fell in mud. Appellant began to kick N.S. multiple times in the face, stomach, and legs as he held the baby with one arm. A neighbor witnessed the assault. Appellant then ran into the house and left the baby face-down hanging off the couch and crying. Appellant returned outside, told N.S. the police were coming, and drove off. Appellant told N.S. to call him when the police were gone. N.S. contacted Amy Pierce, an acquaintance from the YWCA. The police and Ms. Pierce arrived at the house around the same time. N.S. told the officers she had only argued with Appellant. The officers believed N.S. was not divulging the entire story and advised her to leave the house with her son. Ms. Pierce drove N.S. and her son to the YWCA. N.S. then left her son in the care of Ms. Pierce and exited the YWCA.

While walking to a friend's house, N.S. encountered Appellant in the street. N.S. continued into her friend's house. Appellant yelled insults and obscenities at N.S. N.S. exited the rear of the house and entered the car of another acquaintance in an attempt to leave the area. Before they could leave, Appellant pulled up in his car. N.S. approached Appellant's car, and he repeatedly told her to enter the vehicle. N.S. ultimately sat in the front

passenger seat of the car after Appellant promised not to hit her again. Appellant drove toward a highway. While on the highway, N.S. tried to open the car door because she was scared Appellant would assault her again. When Appellant attempted to hit N.S., she tried to jump out of the car but her legs were stuck. N.S. held herself up with her arms while her rear end dragged on the road. At that point, Appellant was driving around 20 MPH. N.S. asked Appellant to stop the car. Appellant continued to drive for approximately fifteen seconds before stopping. After N.S. exited and reentered the car, Appellant drove back to the house. Appellant and N.S. began to argue again, and Appellant eventually left. N.S. later met with Detective Yingling at the house. Detective Yingling took N.S. to the police station to provide a written statement, after which N.S. went to the hospital.

On March 4, 2014, a jury convicted Appellant of two counts each of simple assault and harassment, three counts of REAP, and one count of disorderly conduct. On April 10, 2014, the court sentenced Appellant to consecutive terms of incarceration of twelve (12) to twenty-four (24) months for each count of simple assault and one count of REAP. The remaining counts merged for sentencing. Thus, the court imposed an aggregate sentence of thirty-six (36) to seventy-two (72) months' incarceration. Appellant timely filed a petition under the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546, on January 21, 2015, which sought reinstatement of his direct appeal rights *nunc pro tunc*. The

PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc* on August 27, 2015. On September 3, 2015, Appellant timely filed a notice of appeal *nunc pro tunc*. The trial court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied.

Appellant raises the following issues for our review:

> WAS THERE SUFFICIENT EVIDENCE TO CONVICT [APPELLANT] ON ALL COUNTS OF SIMPLE ASSAULT?
>
> WAS THERE SUFFICIENT EVIDENCE TO CONVICT [APPELLANT] ON ALL COUNTS OF RECKLESSLY ENDANGERING ANOTHER PERSON?
>
> DID THE TRIAL COURT ERR WHEN IT GRANTED THE COMMONWEALTH'S MOTION *IN LIMINE* PREVENTING THE DEFENSE FROM QUESTIONING THE VICTIM REGARDING HER WORK AS A CONFIDENTIAL INFORMANT?
>
> WAS TRIAL COUNSEL INEFFECTIVE WHEN HE FAILED TO OBJECT TO THE TESTIMONY OF DR. JOHN BRESNICK WHEN THE DOCTOR WAS NOT OFFERED AS AN EXPERT WITNESS BUT PROVIDED OPINION EVIDENCE?

(Appellant's Brief at 4).

In his first issue, Appellant argues his neighbor did not have a close view of the initial altercation between Appellant and N.S. and gave contradictory testimony regarding that incident. Appellant contends N.S. admitted in phone calls with Appellant that she had lied to the police and Appellant had not assaulted her. Appellant asserts the responding officers failed to testify and no "impartial" evidence was introduced regarding injuries sustained by N.S. With respect to the second incident on the

highway, Appellant argues the Commonwealth failed to present evidence that Appellant intended to cause harm to N.S. Appellant avers the evidence showed N.S. caused her own injuries when she opened the car door while the vehicle was in motion. Appellant claims the jury acquitted him of the simple assault charge based on the allegation that Appellant struck N.S. in the face while driving, negating the possibility that Appellant's actions in the car forced N.S. to exit the vehicle. Appellant maintains he attempted to mitigate the harm by slowing down and stopping the car as soon as he realized what N.S. was doing. Appellant concludes the evidence was insufficient to sustain his convictions for simple assault. We disagree.

The following principles of review apply to challenges to the sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the

weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

"[C]redibility determinations are made by the fact finder and…challenges thereto go to the weight, and not the sufficiency, of the evidence." *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997). *See also Commonwealth v. Griffin*, 65 A.3d 932 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013) (stating defendant's claim he was wrongly identified as perpetrator of crimes based on "unbelievable identification testimony" went to witness' credibility and challenged weight, not sufficiency, of evidence). A challenge to the weight of the evidence must be preserved in a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

**Rule 607.  Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1)  orally, on the record, at any time before sentencing;

(2)  by written motion at any time before sentencing; or

(3)  in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "As noted in the comment to Rule 607, the

purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." ***Commonwealth v. Gillard***, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004).

The Crimes Code defines the offense of simple assault in relevant part as follows:

> **§ 2701.  Simple assault**
>
> **(a)  Offense defined.—**Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>
> > (1)  attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. 2701(a)(1).

Instantly, Appellant's complaint regarding the lack of police testimony, and his challenges to the credibility of N.S. and the neighbor, implicate the weight, not the sufficiency, of the evidence.  ***See Gaskins, supra***. Appellant, however, failed to raise a weight claim before the trial court at any time in a motion for a new trial.  Therefore, Appellant waived his weight claim with respect to the simple assault conviction arising from the incident outside the house.  ***See*** Pa.R.Crim.P. 607; ***Gillard, supra***.

Regarding the incident on the highway, N.S. testified that Appellant reached over to hit her right before she attempted to jump out of the vehicle.  N.S. then became stuck between the car and the road and injured her body as she was dragged along the road.  Appellant continued to drive

for approximately fifteen seconds before stopping. Therefore, the testimony of N.S. was sufficient for the jury to find Appellant attempted to cause or intentionally, knowingly or recklessly caused bodily injury to N.S. **See** 18 Pa.C.S.A. 2701(a)(1); **Jones, supra**.[2]

In his second issue, Appellant argues N.S. did not suffer serious bodily injury during the incident outside the house, and the Commonwealth failed to produce evidence of Appellant's intent to cause serious bodily injury. Appellant also contends his actions of holding the baby during the assault and placing the baby on the couch did not support an inference that Appellant recklessly placed the baby in danger of death or serious bodily injury. Appellant asserts he was at most negligent but did not consciously disregard a known risk of death or serious bodily injury to the baby. With respect to the incident on the highway, Appellant again claims he did not cause N.S. to attempt to exit the vehicle while it was in motion. Appellant maintains N.S. acted of her own volition, and he attempted to mitigate the

---

[2] Appellant misconstrues the factual basis for the lone simple assault charge that resulted in an acquittal. That charge related to the allegation that Appellant repeatedly struck N.S. in the face when she first entered the vehicle with him (before Appellant drove onto the highway). The jury was still free to determine that Appellant attempted to strike N.S. right before she opened the car door on the highway. The incident in the car also took place not long after Appellant had already threatened and repeatedly kicked N.S. while she lay on the ground outside the house. Moreover, the jury was free to reach inconsistent verdicts, in any event. **See Commonwealth v. Miller**, 613 Pa. 584, 588, 35 A.3d 1206, 1208 (2012) (stating inconsistent verdicts "are allowed to stand so long as the evidence is sufficient to support the conviction").

situation by stopping the car as soon as feasible. Appellant challenges the testimony of N.S. regarding how long he continued to drive while she hung out of the car. Appellant submits N.S. did not suffer serious bodily injury as a result of that incident. Appellant concludes the evidence was insufficient to sustain any of his three convictions for REAP. We disagree.

The Crimes Code defines REAP as follows:

**§ 2705.  Recklessly endangering another person**

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.  The *mens rea* required for REAP is "a conscious disregard of a known risk of death or great bodily harm to another person." ***Commonwealth v. Klein***, 795 A.2d 424, 427-28 (Pa.Super. 2002).

Instantly, N.S. testified that during the initial incident at the house, Appellant repeatedly kicked her in the face, stomach, and legs. When asked how hard the kicks were on a scale of one to ten, N.S. replied nine or ten. Appellant also held the three-month-old infant while he assaulted N.S. in a muddy area. Appellant then left the baby facedown hanging off a couch inside the house. N.S. testified that the baby could not support its own head. Thus, the evidence was sufficient for the jury to find that Appellant placed both N.S. and her son in danger of serious bodily injury during the altercation at the house. ***See*** 18 Pa.C.S.A. § 2705; ***Klein, supra***. Likewise, the testimony of N.S. regarding the subsequent incident on the highway

established that Appellant attempted to hit N.S. again, which prompted her to open the car door. Appellant did not immediately stop the car when N.S. became stuck and her body made contact with the road. Appellant's conduct amounted to a conscious disregard of a risk of serious bodily injury to N.S. *See id.* Actual serious bodily injury or death was not required to convict Appellant of REAP. Based on the foregoing, all of Appellant's REAP convictions were supported by sufficient evidence.[3] *See Jones, supra*.

In his third issue, Appellant argues the court should have allowed him to cross-examine N.S. regarding her prior work as a confidential informant ("CI") for Detective Yingling. Appellant asserts this particular evidence was crucial to the defense theory that N.S. potentially gave false statements under pressure from Detective Yingling. Appellant claims he could not develop a full picture of the relationship between Detective Yingling and N.S. without referring to her work as a CI. Appellant further contends defense counsel was ineffective for failing to respond to the Commonwealth's motion *in limine*, which sought to prohibit disclosure of work N.S. performed as a CI. Appellant concludes the court erred when it granted the Commonwealth's motion *in limine*. We disagree.

"[A] court's decision to grant or deny a motion *in limine* is subject to

_____

[3] Appellant's attack on the credibility of N.S. again constitutes a challenge to the weight of the evidence, which Appellant failed to preserve. *See Gillard, supra*.

an evidentiary abuse of discretion standard of review." ***Commonwealth v. Reese***, 31 A.3d 708, 715 (Pa.Super. 2011) (*en banc*).  Likewise, "Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." ***Commonwealth v. Watson***, 69 A.3d 605, 607 (Pa.Super. 2013) (quoting ***Commonwealth v. Washington***, 63 A.3d 797, 801 (Pa.Super. 2013)).

"[R]egardless of whether the informant was an eyewitness to the transaction for which the defendant was charged, the Commonwealth retains a qualified privilege not to disclose an informant's identity." ***Commonwealth v. Withrow***, 932 A.2d 138, 140-41 (Pa.Super. 2007).

> To overcome that privilege, the defendant must show that his request for disclosure is reasonable and that the information sought to be obtained through disclosure is material to the defense.  Although the defendant need not predict exactly what the informant will say, he must demonstrate at least a reasonable possibility the informant's testimony would exonerate him.  Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed.

***Id.*** at 141 (internal citations and quotation marks omitted).

"Except as provided in Rule 906 (Answer to Petition for Post-Conviction Collateral Relief), an answer to a motion is not required unless the judge orders an answer in a specific case as provided in Rule 577.  Failure to answer shall not constitute an admission of the facts alleged in the motion." Pa.R.Crim.P. 575.  Nevertheless, "the judge would have discretion to impose

- 11 -

other appropriate sanctions if a party fails to file an answer ordered by the judge or required by the rules." ***Id.*** *Comment*.

Instantly, the Commonwealth filed a motion *in limine* on October 14, 2013, which sought to prohibit Appellant from inquiring whether N.S. worked as a CI. The Commonwealth subsequently filed a brief in support of the motion. Appellant filed no answer or brief in response, despite a court order directing him to do so. The court granted the Commonwealth's motion *in limine* on February 24, 2014. The court had discretion to grant the motion as a sanction for Appellant's failure to comply with the court's order to file a response. ***See id.***

Moreover, any prior work of N.S. as a CI in unrelated investigations was irrelevant to this case. N.S. testified here as a victim in a domestic violence matter, and Appellant's offenses had nothing to do with any investigation involving use of a CI. Further, Appellant was able to develop the relationship between N.S. and Detective Yingling without delving into her CI work. On direct examination, N.S. revealed that she had a preexisting relationship with Detective Yingling. N.S. said the detective was "somebody [who] is helping me with my past to get clean." (N.T. Trial, 3/3/14, at 29-30). N.S. also testified on direct and cross-examination as to whether her statement to the police was influenced by her relationship with Detective Yingling. Appellant failed to establish that disclosing the status of N.S. as a CI was material to his defense, reasonable, and in the interests of justice.

*See Withrow, supra*.  Based on the foregoing, the court properly granted the Commonwealth's motion *in limine*.[4]  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/14/2016

_____

[4] To the extent Appellant claims counsel was ineffective for failing to file a response to the Commonwealth's motion, that issue is not properly before us.  *See Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013) (stating ineffective assistance of counsel claims generally are to be deferred to collateral review).  In his fourth issue, Appellant argues counsel also was ineffective for failing to object to the opinion testimony of a Commonwealth witness.  That issue is likewise inappropriate on direct appeal and should be raised in a timely PCRA petition.  *See id.*