COMMONWEALTH of Pennsylvania,
Appellant

v.

Chamar WITHROW, Appellee.

Superior Court of Pennsylvania.

Argued May 1, 2007.
Filed Aug. 27, 2007.

Joan Weiner, Asst. Dist. Atty., Philadelphia, for appellant.

Jill Heilman, Philadelphia, for appellee.

BEFORE: TODD, J., McEWEN, P.J.E., and JOHNSON, J.

OPINION BY JOHNSON, J.:

¶ 1 The Commonwealth of Pennsylvania appeals the trial court's order dismissing all charges against defendant Chamar Withrow following the failure of the Commonwealth to disclose the identity of the confidential informant who corroborated police testimony that implicated Withrow in the sale of cocaine. The Commonwealth argues that Withrow failed to demonstrate

any need for disclosure of the informant's identity and that the informant would be needlessly endangered by such disclosure. We find ample merit in the Commonwealth's assertion. Accordingly, we reverse the trial court's order.

¶ 2 The Commonwealth charged Chamar Withrow with Possession of a Controlled Substance, Possession with Intent to Deliver, and Possession of Drug Paraphernalia, *see* 35 P.S. § 780–113(a)(13), (16), (32), after police executed a search warrant at Withrow's home and found crack cocaine and associated paraphernalia. The police had obtained the warrant on the basis of the report of a confidential informant (CI) who had conducted a controlled buy two days earlier at 1950 Mutter Street in the City of Philadelphia. The CI had arrived at the home with $20 in pre-recorded currency and left with four yellow packets of crack, which he then turned over to police. While the CI conducted the buy, police officer Jeffrey Cujdik watched from a concealed location, noting that the man who answered the door was exceptionally tall. After the buy was concluded, Officer Cujdik returned to his office where he determined that 1950 Mutter Street was the registered address of Chamar Withrow and that Withrow was then on home monitoring at that address. When Officer Cujdik accessed Withrow's police photograph, he recognized the image as the man whom he had seen conduct the controlled buy with the CI. Significantly, he also noted that the description accompanying the photograph indicated that Withrow is 6'10" tall.

¶ 3 Prior to trial, Withrow's counsel filed an omnibus pre-trial motion on a pre-printed form. In the section designated "Discovery," Withrow's counsel did not indicate a request for any evidence then in the Commonwealth's possession. Thereafter, however, on the morning Withrow's trial was set to commence, counsel made an oral motion to require the Commonwealth to disclose the identity of the CI. In support of the motion, counsel indicated that he planned Withrow's defense on the basis of mistaken identification or fabrication as the CI, whose identity was not disclosed, "was the only witness," and therefore "necessary" for the defense in this case. N.T., 2/15/06, at 5, 8. The court recognized on the record that a defendant seeking the disclosure of a CI's identity must identify facts sufficient to "compel the Court to compel the Commonwealth to give you the identity," and then concluded that Withrow had failed to present such facts. N.T., 2/15/06, at 7–8. Thereafter, however, the court conducted a balancing test in reliance upon our Supreme Court's holding in *Commonwealth v. Bing*, 551 Pa. 659, 713 A.2d 56 (1998) and this Court's more recent iteration in *In re D.B.*, 820 A.2d 820 (Pa.Super.2003). The court concluded that notwithstanding Officer Cujdik's testimony, the circumstances compelled the Commonwealth's disclosure of the CI's identity and, on February 15, 2006, so ordered. The Commonwealth declined, however, to comply with the trial court's order. Thereafter, the court dismissed the prosecution with prejudice, stating the following explanation in its Rule 1925(a) Opinion:

> [O]n February 15, 2006, this Court issued an order that was dictated by the facts and fully supported by the law. The case was continued to March 15, 2006, in the event of a Commonwealth appeal. On that date no appeal had been taken and the Court was advised that the Commonwealth did not intend to take an appeal. The Commonwealth was not prepared to proceed on March 15, 2006, and for that reason the Court dismissed the case.

Trial Court Opinion, 8/7/06, at 3–4.

¶ 4 The Commonwealth has now filed this appeal from the order entered March

15, raising the following question for our consideration:

Did the [trial] court err when it entertained defendant's waived motion for disclosure of a confidential informant's identity; when it misapplied the confidential informant privilege by ordering the Commonwealth to disclose the informant's identity without holding defendant to his initial burden of proof; and when it then dismissed all charges with prejudice?

Brief for Appellant at 4.

¶ 5 Before we proceed to the merits of the Commonwealth's claim concerning disclosure of the CI's identity, we pause to address the trial court's assertion that "[t]he case was continued to March 15, 2006, in the event of a Commonwealth appeal," and that "[t]he Commonwealth was not prepared to proceed on March 15, 200[6]." Trial Court Opinion, 8/7/06, at 3–4. The Commonwealth appears perplexed by the trial court's assertion and points to a motion for reconsideration and a motion for certification of the trial court's order for appellate review, both of which appear of record after entry of the trial court's disclosure order, but neither of which was ruled upon. Moreover, we note that, notwithstanding the trial court's dismissal of the prosecution on the grounds stated in its March 15, 2006 order, the certified record, as supplemented, does not substantiate either that the trial was continued to March 15 or that the case was called for trial and the Commonwealth was unprepared. As we have often repeated, matters not appearing in the certified record are not cognizable for appellate review; indeed, they are deemed not to have transpired. *See Commonwealth v. Wint*, 730 A.2d 965, 967 (Pa.Super.1999) ("For purposes of appellate review, what is not in the certified record does not exist."). Accordingly, to the extent we find the forego-

ing assertions by the trial court unsubstantiated, we cannot acknowledge them as grounds for affirmance of the trial court's order, and will resolve this case on the merits of the Commonwealth's disclosure claim.

¶ 6 Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion. *See Commonwealth v. Belenky*, 777 A.2d 483, 487 (Pa.Super.2001) (citing *Commonwealth v. Roebuck*, 545 Pa. 471, 681 A.2d 1279, 1282 (1996)). Indeed, where the informant was an eyewitness to the transaction in question, the role of the trial judge's discretion is established by rule of court. *See* Pa.R.Crim.P. 573(B)(2)(a)(i). Where the informant was not an eyewitness, the extent of the court's discretion is specified more broadly by case law. As noted in *Belenky* by Judge (now Justice) Michael Eakin,

We believe that no fixed rule with respect to disclosure [of the confidential informant's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Belenky*, 777 A.2d at 488 (quoting *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284, 287 (1967) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957))). Significantly, regardless of whether the informant was an eyewitness to the transaction for which the defendant was charged, the Commonwealth retains a qualified privilege not to

disclose an informant's identity. *See Belenky,* 777 A.2d at 488. To overcome that privilege, the defendant must show that his request for disclosure is reasonable and that the information sought to be obtained through disclosure is material to the defense. *See id.* Although the defendant need not predict exactly what the informant will say, he must demonstrate at least a reasonable possibility the informant's testimony would exonerate him. *See id.* (citing *Roebuck,* 681 A.2d at 1283). "Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed." *Belenky,* 777 A.2d at 488 (citing *Roebuck,* 681 A.2d at 1283).

¶ 7 In this case, the trial court reached its decision in reliance upon our Supreme Court's decision in *Bing, supra,* and our own more recent decision in *D.B., supra.* The trial court reasoned that in view of the informant's status as an eyewitness to the drug sale that prompted issuance of a warrant for the search of his home, both cases compelled the trial judge to conduct the foregoing balancing test. N.T., 2/15/06, at 23 ("[T]he law is clear. I mean it's clear, the *Bing* case tells us when to require the revelation of the confidential informant and D.B. tells you happens if you don't."). The court reasoned further that should it fail to conduct the balancing test, its order would be vacated and the case remanded by this Court. N.T., 2/15/06, at 23–24. Unfortunately, the court erred in its interpretation of the mandate of these cases as they apply to the facts before us.

¶ 8 In *Bing,* our Supreme Court applied the holding in *Carter, supra,* balancing the defendant's need for disclosure of the informant's identity with the Commonwealth's need to assure the safety of the informant. *See* 713 A.2d at 664. The Court recognized implicitly that the defendant had satisfied the threshold test of materiality specifically because the informant had been present with the arresting officer when the officer had conducted a controlled buy for *which the Commonwealth then charged him. See id.* at 663–64. Consequently, the defendant's assertion of a defense of mistaken identity implicated the testimony of the informant *as an eyewitness. See id.* Similarly, in *D.B.,* this Court found the informant's testimony material in view of his status as the only eyewitness to the transaction *for which the defendant was arrested* other than the arresting officer. *See* 820 A.2d at 822 ("Upon review, we find that the trial court erred when it determined that there was no showing that disclosure of the informant's identity was material to Appellant's defense of misidentification.").

¶ 9 In this case, by contrast, the CI was not an eyewitness to the offense *with which the defendant was charged.* In point of fact, the transaction that the CI witnessed did not serve as the basis for Withrow's arrest but only as grounds for issuance of a warrant that allowed the police to search his home. This difference in the circumstances of the CI's participation marks a point of departure from *Bing* and *D.B.* that is not reflected in the trial court's ruling. This case is not controlled by *Bing* and *D.B.,* as the trial judge concluded, but by our earlier decision in *Belenky.*

¶ 10 In *Belenky,* as in this case, the defendant sought disclosure of the identity of an informant who had participated with police in a controlled buy at the defendant's home. *See* 777 A.2d at 485. The police then relied upon the occurrence of that sale to establish probable cause for the issuance of a warrant. *See id.* When the police then executed the warrant, three days after the informant's participation in the controlled buy, their search of the

premises revealed multiple packets of cocaine and heroine. *See id.* In support of his motion for disclosure of the informant's identity, the defendant asserted a defense of mistaken identity, arguing that the informant was the only non-police witness to have observed the controlled buy and that, consequently, his testimony was both material and necessary. *See id.* at 487. Upon review of the defendant's motion, the trial court correctly refused to order disclosure, determining that the informant's identity was not relevant to the possession and distribution charges at issue because those charges stemmed not from the controlled buy itself, but from the recovery of controlled substances from the defendant's home three days later. *See id.* at 488. On appeal, a panel of this Court affirmed the trial court's denial of the disclosure motion on the same grounds:

> [T]he trial court had difficulty seeing what relevance this evidence had to appellant's misidentification theory; so do we. While the evidence was relevant to appellant's attack on the warrant's particularity, it did not show the police misidentified appellant, and provides no support for a mistaken identity defense.

*Id.* at 489. The Court then amplified its conclusion with a blanket distinction of cases that, like *Bing* and *D.B.*, stem from charges imposed by the Commonwealth based on the controlled buy in which the informant actually participated. *See id.* The Court's distinction highlights the fact that the informant's testimony concerning the defendant's identity simply is not material to the discovery of controlled substances in his home following execution of the search warrant. See id. The following discussion is illustrative:

> The cases appellant cites involve charges based on single transaction sales; that is not the charge here. Appellant was charged with the offenses resulting from

the search, not the sale, and the validity of that search has nothing to do with the identity of the man who sold drugs to the officer on January 30. Whether that man was appellant or not, it established *probable cause and the search would* still have occurred three days later. At the search, appellant would have been found in possession of the drugs, no matter the seller's identity three days before. We see no indication the informant was present when the search took place; the informant could add nothing to the question of identity then, which is the only identity relevant to guilt.

*Id.* The Court then completed its analysis with the express recognition that the defendant had failed to demonstrate that the informant's identity was material to his defense. *See id.* The Court concluded accordingly, that with "[t]his threshold unfulfilled, the trial court had no duty to balance the competing interests to determine if disclosure was required. Accordingly, the trial court did not abuse its discretion by denying appellant's motion to disclose the identity of the confidential informant." *Id.*

¶ 11 In this case, we are compelled to a different conclusion. The trial judge's determination here that our Courts' decisions in *Bing* and *D.B.* require imposition of an appropriate balancing test misperceives the materiality of the CI's testimony. Like the informant in *Belenky,* the CI's account afforded no more than evidence of probable cause for the issuance of a search warrant for the defendant's home. The CI was not present two days later when the warrant was executed, and the controlled substances, the possession and distribution of which formed the basis of the charges at issue, would have been found regardless of whether the CI identified Withrow. Because Withrow did not attack the validity of the warrant, the CI's testimony was not material to his defense. *See Belenky,* 777

A.2d at 489. For the foregoing reasons, we conclude that Withrow failed to satisfy the threshold test necessary to overcome the Commonwealth's qualified privilege. *See id.* Accordingly, the trial court erred in ordering disclosure of the CI's identity. *See id.*

¶ 12 For the foregoing reasons, we reverse the trial court's order directing disclosure and remand this matter for further proceedings consistent with this Opinion.

¶ 13 Order **REVERSED.** Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**